UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 24-CR-80038-CANNON

UNITED STATES OF AMERICA

vs.

ROBERT CLARK,

Defendant.

______________________________/

**MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM**

COMES NOW, the Defendant, ROBERT CLARK, and in accordance with the decision in *United States v. Booker, 543 U.S. 220 (2005)* and its progeny and 18 U.S.C. § 3553(a), files this Motion for Downward Variance and Sentencing Memorandum setting forth all of the factors and reasons this Court should consider before imposing a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

## PRELIMINARY STATEMENT

Robert Clark has pled guilty to conspiracy to defraud the United States and to receive healthcare kickbacks and purchase Medicare Beneficiary Identifiers, in violation of 18 U.S.C. § 371. This memorandum, among other things, highlights Mr. Clark's [redacted] his personal history and characteristics, the nature and circumstances of the offense, and the need to avoid unwarranted sentencing disparities, all of which justify a sentence well below the advisory guideline range.

## *OFFENSE CONDUCT*

Robert Clark was involved in a conspiracy to defraud the Medicare program, primarily through the operations of Clear Choice Diagnostics, Inc. (Clear Choice), which was formed and operated under the influence and direction of Ben Plaza, now deceased. Clark's involvement included managing in-house operations and compliance for Clear Choice, submitting fraudulent Medicare enrollment applications, and making kickback payments for referrals. Clark's involvement in the conspiracy included submitting fraudulent Medicare claims, making illegal kickback payments, and purchasing Medicare beneficiary information without lawful authority. Again, all of these activities for which Mr. Clark is responsible [redacted] [redacted] including primarily Ben Plaza.

Clark's role was primarily administrative and operational, acting under the direction of Ben Plaza, the principal architect and orchestrator of the scheme. Plaza made all major business decisions and directed Clark in financial operations. [redacted]

[redacted]

[redacted]

## ADVISORY GUIDELINE RANGE

The Presentence Investigation Report (PSI) calculates a total offense level of 23 and a criminal history category of I, resulting in an advisory guideline imprisonment range of 46 to 57 months.



**CONSIDERATION OF 18 U.S.C. § 3553(a) FACTORS**

The Court must consider all 3553(a) factors prior to making a decision, not just the fact that a crime was committed. *See Gall v. United States, 552 U.S. 38, 49-50 (2007)*. These include (1) the nature and the circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) To protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; Additionally and most importantly the court needs to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The Eleventh Circuit has repeatedly affirmed below guideline sentences after Booker. *United States v. Clay, 483 F.3d 739 (11th Cir. 2007)* (affirming 60-month sentence even though guidelines were 188-235 months based on post-offense rehabilitation); *United States v. Mathis, 186 F. App'x 971 (11th Cir. 2006)* (50% variance from top end of guidelines affirmed in Hobbs Act extortion and obstruction of justice case); *United States v. Gray, 453 F.3d 1323 (11th Cir. 2006)* (affirming 72 month sentence even though low end of guidelines were 151 months, more than double sentence imposed); *United States v. Halsema, 180 F. App'x 103 (11th Cir. 2006)* (unpublished) (affirming 24 months sentence even though guidelines were 57-71 months); *United States v. Williams, 435 F.3d 1350 (11th Cir. 2006)* (90 months' imprisonment was sufficient, but not greater than necessary to punish, deter, and rehabilitate defendant even though low end of guidelines was 188 months).

Applicable Section 3553(a) Factors

**Nature and Circumstances of the Offense**

The offense involved a conspiracy to defraud Medicare through fraudulent claims for genetic testing and COVID-19 tests. While the conduct is serious, it is important to note that Clark was not the mastermind [REDACTED], primarily Ben Plaza. His role, though significant, was influenced by his susceptibility to manipulation due to his past struggles with substance abuse and his lack of experience in the healthcare industry. Attached and incorporated into this memorandum is a copy of a letter from Rober's current therapist, [REDACTED] Exhibit "A". She has suggested that Robert's past untreated mental health condition negatively impacted his ability to extricate himself from his involvement in the current offense.

**History and Characteristics of the Defendant**

Mr. Clark, born on April 1, 1994, in Danbury, Connecticut, comes from a family with a history of mental health and substance abuse issues. He struggled with drug addiction from a young age, which led to multiple stints in rehabilitation facilities. Clark's addiction began as a coping mechanism to deal with the stress of his father's mental health issues and the financial instability his family faced during his teenage years.

Robert Clark's involvement in the Medicare fraud scheme must be viewed in the context of his personal history and characteristics.

Despite these challenges, Clark has demonstrated a commitment to overcoming his addiction and improving his life. He has been actively engaged in therapy, addressing his underlying issues of [redacted]. His recent employment as a behavioral technician at Agape Treatment Center underscores his efforts to contribute positively to society and maintain sobriety. Robert has been sober from alcohol and drugs, apart from medical marijuana, since January 1, 2014. His therapist, [redacted], has noted significant progress in his behavior and coping mechanisms. Robert had voluntarily began seeing [redacted] every week for the past year during such time significant ground has been made in identifying the root issues affecting Robert which began at a young age. While Robert is still in therapy, he remains open and eager to continue his mental health treatment moving forward.

Clark's employment at Agape Treatment Center, helping others with substance abuse and mental health disorders, not only helps others with similar issues but continues to help him in his own rehabilitative efforts. His supervisor, Geoff Hyser, has expressed support for Robert, recognizing his contributions to the treatment center. Attached and incorporated into this

memorandum is a letter from Robert's employer indicating that he is not only an outstanding employee and teammate but such an asset to the clients at Agape Behavioral Health Center because of how much he helps and provides insight, having also been in their shoes. Exhibit "B".

Clark also maintains strong relationships with his family, particularly his sister, Amanda Lutzker, who has been a supportive presence throughout this case. His family's support has been and still is a critical factor in his rehabilitation and reintegration into society. Clark's stable residence in Oakland Park, Florida, and his positive contributions to his community further demonstrate his commitment to leading a lawful and productive life.

Clark's background is marked by early exposure to familial instability and substance abuse. Despite these challenges, he has taken substantial steps toward rehabilitation and personal growth. His ongoing therapy, employment, and strong family support system indicate his potential for successful reintegration into society. All of those who know Robert personally paint a similar picture of who he is; a kind, caring, loving human being who generally puts his own needs behind those he serves. Robert's desire to help those who struggle with drug addiction really shows to everyone around him. Attached and incorporated into this memorandum are several character letters. Composite Exhibit "C".

**Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

A much shorter prison sentence than what the advisory guidelines suggest, followed by a period of supervised release with conditions for continued therapy and substance abuse treatment, will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment under the facts and circumstances of this particular case. This balanced approach recognizes Clark's cooperation and successful personal efforts at reform. A sentence

that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]." See U.S v. Ontiveros, 07–CR–333, 2008 WL 2937539, at *3 (E.D. Wis. July 24, 2008); See also U.S. v. Stern, 590 F. Supp. 2d 945, 957 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake.") Given the circumstances in this particular case coupled with Mr. Clark's substantial assistance to the government shows others that cooperating with the government can also promote respect for the law and provides just punishment. In United States v. Williams, 435 F.3d 1350 (11th Cir. 2006), the court found that an 188-month sentence was too long and promoted disrespect for the law, justifying a 90-month departure as reasonable.

**Need for the Sentence to Afford Adequate Deterrence**

The proposed sentence of a much shorter prison sentence will serve as a deterrent to Mr. Clark and others who might consider engaging in similar fraudulent schemes. The conditions of supervised release will ensure that Clark remains under close supervision, further mitigating the risk of recidivism. Mr. Clark falls within a criminal history category one as he has never had any prior criminal history whatsoever. Having been in full compliance with pretrial release since he voluntarily surrendered back in February and knowing that this case was going to be filed when he first had contact with law enforcement back in June, 2022 certainly shows that Mr. Clark can follow the rules and conditions of this Court. Based upon his personal characteristics and law-abiding history before meeting Mr. Plaza, it is highly unlikely that he will ever be back before this Court again or involved in the criminal justice system in any way.

**Need to Protect the Public from Further Crimes by the Defendant**

A much shorter sentence than what the advisory guidelines indicate, followed by conditions of supervised release, including ongoing therapy and regular monitoring, will provide the necessary structure to prevent Mr. Clark from reoffending. His demonstrated commitment to rehabilitation and his stable support system further reduce the risk of future criminal conduct.

Additionally, the United States Sentencing Commission has concluded in the past that of all the different age and criminal history categories, the rate of recidivism for someone in Rober's position, is much lower than individuals younger and those with greater criminal history in their past. *See United States Sentencing Commission, Measuring Recidivism: Criminal History Computation of the Federal Sentencing Guidelines (2004).* It has also been mentioned that those like Robert who have no prior arrest have an even lower rate of recidivism than those individuals in Criminal History Category I who have an arrest history and are "the most empirically identifiable group of federal offenders who are the least likely to re-offend." *United States Sentencing Commission, Recidivism and the "First Offender (May 2004).*

Looking at everything in context, Mr. Clark's very low risk of recidivism means that there is no need to impose a long prison sentence to protect the public from future crimes. Courts have recognized the significance of a reduced risk of recidivism and relied upon it in imposing below-guideline sentences. *See, e.g., Pepper v. United States, 131 S. Ct. 1229, 1234 (2011)*, (where the Court describes "the likelihood that [the defendant] will engage in future criminal conduct," as "a central factor that sentencing courts must consider."); *United States v. Carter, 538 F.3d 784, 792 (7th Cir. 2008)* (where the court concluded the district court did not abuse its discretion when it determined that the defendant, "based on her age and the totality of

circumstances . . . was unlikely to commit further crimes in the future" and upheld a "sentence significantly below an advisory guidelines sentence").

Another circumstance, sadly is the fact that Mr. Clark's close friend, Ben Plaza, who recently died, who he was extremely close with because of their similar circumstances in the past, was the person with all the knowledge and wherewithal who without him, Mr. Clark would never have committed the offenses that now bring him before the Court.

**Need to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Clark's continued participation in mental health and substance abuse treatment will address the underlying issues that contributed to his criminal behavior in the first place. This approach is consistent with the goal of providing correctional treatment in the most effective manner.

**Need to Avoid Unwarranted Sentencing Disparities**

Imposing a sentence that reflects Clark's , and his personal history and characteristics will help to avoid unwarranted sentencing disparities. . A much shorter prison sentence than what the advisory guidelines suggest, followed by a period of supervised release with conditions for continued therapy and substance abuse treatment, is proportionate to the level of his culpability .

## CONCLUSION

Robert Clark's involvement in the Medicare fraud conspiracy was influenced by his personal vulnerabilities and the direction of more culpable conspirators. [REDACTED] [REDACTED] and his ongoing efforts to address his substance abuse and mental health issues warrant a sentence that recognizes these mitigating factors.

For these reasons, Robert Clark respectfully requests that this Court impose a sentence that is much shorter than the advisory sentencing guidelines. Taking into consideration all of the 18 U.S.C. § 3553(a) factors, a period of supervised release with conditions for continued therapy and substance abuse treatment after serving a much shorter incarcerated sentence would be sufficient but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted by,

JONATHAN S. FRIEDMAN, P.A.
ATTORNEY FOR ROBERT CLARK
101 N.E. 3RD AVE.
SUITE 1500
FORT LAUDERDALE, FLORIDA 33301
TELEPHONE: (954) 713-2820
FACSIMILE: (754) 301-5109

/S/ Jonathan S. Friedman
JONATHAN S. FRIEDMAN, ESQ.
FLORIDA BAR NUMBER: 0973297

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2024, the undersigned attorney filed this motion under seal. A copy of this motion was served on the government via email but not on any other party using CM/ECF.

JONATHAN S. FRIEDMAN, ESQ.



Sincerely

EXHIBIT
A
tabbies



To Whom It May Concern,

    I am writing you this letter on behalf of Robert Clark. My name is Geoff Hyser and I am the BHT Supervisor here at Agape Behavioral Health Center. Rob is an outstanding employee and a great Teammate! He is a Lead BHT, meaning he is in charge of the staff and housing at one of our three properties. He consistently provides quality and compassionate care to the community we serve daily. It is an absolute pleasure and relief to have him on our Team. The clients are also constantly complimenting Rob on how he conducts himself around them and how helpful and insightful he is. He is a big support system at housing where there are no therapists readily available. If you have any questions please feel free to reach out to me.

Truly,

Geoffrey Hyser
Ghyser@agapebhc.com
954-513-7979



Joseph Giuliano
140 NW 18th St, Pompano Beach
FL, 33060

To Whom it May Concern,

I am writing you on behalf or Robert Clark, in hopes to paint an accurate picture of him and his character.

I have had the honor and privilege of knowing and befriending Mr. Clark since January of 2015, Robert has since become one of my main pillars of support and closest friends since knowing him. Both of us new to South Florida, and in need of positive and influential people, with a heart and mind to want to help and love others, made for an amazing and positive approach to life, and investment into one another. I tell you this including myself as I would not be where I am today, or who I am today without the influence and friendship of Mr. Clark. As the COO of my company, and charged with leading others, and pursuing care for those inflicted with pain, suffering and trauma, I can stand firmly in knowing these things to be true for and about him.

Robert, since I've known him up till now, present day, has been an honest, kind, caring, loving human, with a heart and mind to serve others, always putting himself behind those that he cares for, and in most cases before those in need. He has come from much adversity in life, and achieved something, through hard work, dedication, and intentional focus on healing, that many from where he and I both are from could not. He has dedicated himself to not becoming another statistic or number, and I believe whole heartedly, even though there may be human error to be accountable for, he shouldn't be one today.

As an individual, saved by grace, I believe all are subject to the same provisions, even by human hand, to prove themselves worthy of a chances. I believe Mr. Clark to be an individual very capable and focused on making and doing right, and I believe given the opportunity and chance now, he could very well show that. I have spent much time around him lately, and know this to be true by his present day approach to serving and helping others.

Thank you for taking the time to read this, and taking this reference into consideration, please feel free to contact me for any further needs or potential questions.

Sincerely,

(848)-223-1246
Jgiuliano911@gmail.com

EXHIBIT
Composite
C

# Letter of Character

To Whom This May Concern,

My name is Christopher Penn, and I am proud to offer my firsthand relationship to the upstanding character of Mr. Robert M. Clark. For the last 10 years, I have known Mr. Clark both personally and professionally. As a master's level substance abuse counselor, I have worked beside Mr. Clark who has assisted countless clients overcome their lifestyles of active alcoholism and addiction. Robert was always punctual, respectful to clients and peers, and a credit to his team of behavioral health technicians.

During my personal relationship with Mr. Clark, I have had the privilege of watching him grow in a 12 step/self help fellowship, in which I had the honor of presenting him with an 8-year medallion. In addition to witnessing his own personal growth, I have relationships with several of the men he has worked with and have shared their successes as well.

It has been my experience that Mr. Clark has always been gracious, courteous, others centered, family oriented, and humble. I have the upmost faith in, and respect for Mr. Clark, and look forward to the opportunity of working with him again in the future.

Please do not hesitate to contact me should you require any further information.

Christopher R. Penn, MCAP

Christopher Penn
1458 NW 48th Lane
Boca Raton Fl, 33431

(513) 833-5057
crobert1271@gmail.com